**In re USAFRICA AIRWAYS HOLDINGS, INC. and USAfrica Airways, Inc., Debtors.**

**UNITED STATES DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**USAFRICA AIRWAYS, INC., Appellee.**

Civil A. No. 95–595–JJF.

United States District Court,
D. Delaware.

Feb. 2, 1996.

Gregory M. Sleet, U.S. Attorney, Ellen W. Slights, Asst. U.S. Attorney, Department of Justice, Wilmington, Delaware. J. Christopher Kohn, Tracy J. Whitaker, Charles D. Stodghill, Civil Division, Washington, D.C. Bernard F. Diederich, U.S. Attorney, James R. Dann, Asst. U.S. Attorney, Department of Transportation, Washington, D.C., for Appellant.

Laura D. Jones, S. David Peress of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware. Fruman Jacobson, Robert B. Millner, Jonathan D. Taft of Sonnenschein Nath & Rosenthal, Chicago, Illinois, for Appellee.

### MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is the United States Department of Transportation's ("DOT") appeal from an Order of the Bankruptcy Court restraining DOT from continuing administrative proceedings to reallocate authority previously granted to USAfrica Airways, Inc. ("USAfrica") to operate scheduled air service between the United States and South Africa. (D.I. 5). DOT argues that although USAfrica is currently in bankruptcy proceedings, its Show Cause action is exempt from the automatic stay imposed by § 362(a)(1) of the Bankruptcy Code by the express police and regulatory exception found in § 362(b)(4) of the Code. (D.I. 6, p. 11). Based on the specific facts and unique circumstances of this case, the Court finds

that DOT's reallocation of the exclusive right to operate air service between the United States and South Africa affects critical public business and falls within the police and regulatory exception of Bankruptcy Code § 362(b)(4). Accordingly, this case will be remanded to the Bankruptcy Court to allow it to lift the restraining order and allow DOT's administrative proceedings to continue.

## I. BACKGROUND

DOT regulates both domestic and international air transportation. 49 U.S.C. subtitle VII. Although Congress has deregulated much of the domestic air travel industry, DOT maintains significant regulatory authority over international air travel. Congress has specified a list of factors for DOT to consider when awarding foreign routes to airline carriers, and it is ultimately DOT's responsibility to determine which carriers will service particular international routes. 49 U.S.C. § 40101(a). Under this regulatory scheme, no carrier can operate an international route unless specifically authorized to do so by DOT. 49 U.S.C. § 41102(b)(2).

The United States–South Africa airline market is unique. In 1986, due to South Africa's apartheid form of government, the U.S. barred all air service between the two countries. Since this sanction was lifted in 1991, the South African government has permitted U.S. carriers to operate only an equal number of frequencies[1] as is operated by its national airline, South African Airways. ("SAA"). Because SAA operates only six roundtrip flights per week between South Africa and the United States, U.S. carriers have also been limited to a total of six frequencies.

In November, 1992 DOT granted to USAfrica the six available frequencies for the U.S. to South Africa route. However, on February 8, 1995, USAfrica commenced voluntary Chapter 11 bankruptcy proceedings and ceased all air service operations. As a result, since February, 1995, no U.S. carrier has provided service to South Africa, and SAA has effectively been left with a monopoly of the market.

Approximately 80,000 U.S. passengers fly to South Africa each year. Due to the lack of air service competition, these passengers are vulnerable to higher prices, lower quality service and a lack of available seating. Additionally, businesses which ship goods to and from South Africa face higher prices and a reduced number of cargo flights[2]. Consequently, individual and business consumers have been harmed due to USAfrica's nonuse of the South Africa frequencies.

## II. DISCUSSION

### A. Standard of Review

■■■ The district court acts as an appellate tribunal and is governed by traditional standards of appellate review when reviewing a decision of the bankruptcy court. Accordingly, the court reviews the bankruptcy court's findings of fact under a clearly erroneous standard. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir.1992); Fed. R.Bankr.P. 8013. Further, the bankruptcy court's conclusions of law are reviewed de novo. *Id.; In re Trans World Airlines*, 182 B.R. 102, 105 (D.Del.1995).

■■■ The instant appeal requires this Court to decide whether the automatic stay provision of the Bankruptcy Code prevents DOT from proceeding with its Show Cause hearings concerning reallocation of USAfrica's exclusive use of the United States–South Africa frequencies. *See* 11 U.S.C. § 362. Section 362(a) provides a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor ...". 11 U.S.C. § 362(a)(1). However, the filing of a petition does not operate as a stay "of the commencement or continuation of an action

---

1. A "frequency" is an operating authorization issued by DOT to an air carrier to enable the carrier to provide service to a foreign country. Each frequency is one roundtrip flight per week. (D.I. 6, p. 5 n. 2). The specific terms and conditions of frequencies may vary from one foreign country to another. (D.I. 8, pp. 2–3).

2. Cargo flights between the countries have been reduced to one flight per week.

or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4). The Congressional intent of the § 362(b)(4) exception is to permit governmental units to avoid the restrictions imposed by the automatic stay when necessary to "protect the public health and safety." See 11 U.S.C. § 362, Legislative Statements. Congress has also noted that "there has been some overuse of the stay in the area of governmental regulation" and by "exempting these [governmental] actions from the scope of the automatic stay, the court will be required to examine the [government] action more carefully with a view to protecting the legitimate interest of the [government] as well as of the estate." H.R.Rep. No. 595, 95th Cong., 2d Sess. 174, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6135.

Under the unique facts of this case, the Court finds that DOT's regulation of the frequencies constitutes critical public business necessary to protect public welfare and sufficient to justify exemption from the automatic stay. The undisputed facts show that U.S. airlines are limited to just six frequencies to South Africa. Because all of these frequencies were previously allocated to USAfrica, which subsequently ceased operations, no U.S. carrier is able to provide service. Consequently, all passengers desiring to fly to South Africa and all businesses needing to ship cargo there are completely at the mercy of SAA, the only airline servicing the route. With the reopening of trade to South Africa, air service is essential to developing business relationships in that country. The monopoly that has effectively been created due to USAfrica's bankruptcy both subjects present passengers and businesses to unfair price and service conditions and discourages potential passengers and businesses from attempting to enter the South Africa market. Therefore, given the specific facts involved in the instant case, the Court concludes that DOT's administrative hearings concerning USAfrica's South Africa frequencies constitute critical public business that falls within the police and regulatory power exception of § 362(b)(4).

### III. CONCLUSION

For the reasons discussed, the Order of the Bankruptcy Court will be reversed and the case remanded to allow the Bankruptcy Court to lift the restraining order and permit DOT's Show Cause proceeding to continue.